UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVE CAMPBELL AND CATRENIA CAMPBELL, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 4:17-cv-02390-JAR<br>) |
| BAYLARD, BILLINGTON, DEMPSEY & JENSON, P.C., et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM & ORDER

On August 23, 2018, this matter came before the Court for a hearing on specific pending motions and an Order to Show Cause directing the Campbells to show cause why sanctions should not be issued for their willful disobedience of direct orders of this Court. (Doc. No. 320). The Campbells, proceeding pro se, failed to appear. Counsel for Defendants appeared. For the reasons set forth below and for those articulated on the record, the Court will, under its inherent authority, dismiss this action with prejudice as a sanction for the Campbells' willful disobedience of this Court's Orders.

### BACKGROUND

From the pleadings in this case, it appears that the history of litigation between the parties in this lawsuit spans a number of years and numerous courts, and it has been summarized in a number of the Court's previous orders. Therefore, the Court will only set forth the history relevant to the current proceedings.

The Campbells filed this lawsuit on September 11, 2017 against the following Defendants: Baylard, Billington, Dempsey & Jenson, P.C.; David Lawrence Baylard; Damian Robert Struzzi; Woodland Lakes Trusteeship, Inc.; Woodland Lakes Community Neighborhood Watch; Deborah

Ann Clutter; Linda Nolen; Crystal Michelle Kallansrud; Law Office of Gary G. Matheny; Gary Glen Matheny; Robert Murphy; Wendy Lynn Wexler-Horn; Douglas R. Bader; Cheryl Davis; Laura Thielmeier Roy; Washington County Sheriff's Department; Thomas Leon Colyott; Linda Mantia; Cynthia Borgard; Lance E. Wood; Arthur Hurlburt; Craig Kinneman; Francis Oscar Darian, Jr.; Russell Richards; Lawrence Deis; James Moldovan; Michael Frank; David Vilcek; Michael Bernheisel; John Buhmann; Bryan Griffith, Sr.; Dora Rulo; Darin Carter; Thomas Larue Smith, Jr.; and William David Mitchell.

At the heart of the Campbells' lawsuit is a dispute over unpaid assessments for a property they purchased at Woodland Lakes in the fall of 2011. Specifically, the Campbells allege that Defendant Woodland Lakes Trusteeship unlawfully demanded that they pay the previous owner's back assessments (totaling approximately $2,000). The Campbells refused, which ultimately resulted in Woodland Lakes blocking Plaintiffs from accessing their property located in the development.

Claims related to this dispute have been filed in several other jurisdictions. The Campbells first attempted to bring a lawsuit regarding the assessments dispute in Texas, which was dismissed for improper venue. Then, in 2013, Woodland Lakes Trusteeship, through the Defendant law firm Baylard, Billington, Dempsey & Jenson, filed a lawsuit ("2013 lawsuit") against the Campbells in Washington County, Missouri state court alleging defamation, malicious prosecution, and, later, unpaid assessments. *Woodland Lakes Trusteeship, Inc. v. Dave and Catrenia Campbell*, 13WA-CC000410. The Campbells retained Defendant Gary Matheny and his law firm to transfer venue, but he later withdrew from representation.

On October 2, 2015, the trial court ruled in favor of Woodland Lakes Trusteeship on summary judgment and entered a judgment in the amount of $2,285.77 in unpaid assessments, plus

$7,545.32 in attorney's fees, against the Campbells.  The Campbells appealed, and the Missouri Court of Appeals affirmed the state court's decision.

In January 2018, a judge was assigned to the 2013 lawsuit, and, in April 2018, an order was entered by that judge appearing to re-open the case.  Woodland Lakes Trusteeship subsequently filed a writ of prohibition with the Missouri Court of Appeals, which held that a final judgment resolving all claims in the 2013 lawsuit had been entered on October 2, 2015, and that final judgment had been affirmed by the appellate court.  The Court of Appeals opined that the Campbells were merely seeking to relitigate the issues and reopen their trial court proceeding, which "is exactly the kind of action that the law of the case prohibits."  (Doc. No. 268-1).

The Campbells filed another lawsuit in Missouri state court on August 21, 2017, styled *Dave and Catrenia Campbell v. Woodland Lakes Trusteeship*, 17WA-CC00327 ("2017 lawsuit"), a few weeks before filing the instant action in federal court.  In the 2017 lawsuit, the Campbells challenge the lien filed on their property that resulted from the 2013 lawsuit.  The state court on August 13, 2018 issued an order granting Defendants' motion to dismiss on the basis that the Campbells' amended petition constituted a compulsory counterclaim in the 2013 lawsuit.  That matter remains pending because the Campbells were granted leave to amend their petition.

The Campbells then brought this lawsuit in federal court listing a variety of grievances with regard to Defendants' allegedly fraudulent conduct.  In their third amended complaint, the Campbells assert the following: (1) violation of 42 U.S.C. § 1983; (2) RICO Act violations; (3) conspiracy; (4) extortion with color of law in violation of 18 U.S.C. § 1951; (5) FDCPA violations; (6) Violations of the First Amendment; (7) implied cause of action – due process pursuant to Federal Rule 5.2; and (8) money damages.  The claims challenge, inter alia, Defendant Woodland Lakes Trusteeship's conduct surrounding the unpaid assessments; Defendant Washington County Sheriff's Department's conduct at the time the Campbells were barred from entering the property

and thereafter; Defendant Baylard, Billington, Dempsey & Jenson's conduct in filing the state lawsuit against them and litigating the case; the state court judge's rulings at the state court level; Defendant Matheny's conduct in his limited representation of the Campbells before the state court; and certain appellate court employees' conduct in allegedly concealing and spoiling the Campbells' sole exhibit entered in the appeal.

Since initiating this lawsuit in September 2017, over 300 documents have been filed, primarily by the Campbells, including multiple efforts to amend pleadings and add parties. On March 26, 2018, the Campbells sought a stay in the case, arguing that the 2013 lawsuit was still pending and had an impact on this case. (Doc. No. 205). On April 16, 2017, the Court set the motion for a hearing on May 9, 2018, and directed the Campbells to appear in person. (Doc. No. 217). The Campbells then filed a motion to appear at the hearing by telephone (Doc. No. 222) and a motion to withdraw their motion to stay (Doc. No. 223), stating that it would be a hardship for Plaintiffs to travel from Florida in May due to their employment obligations. The Court granted the motion to withdraw and cancelled the hearing. (Doc. No. 225).

On June 19, 2018, the Campbells filed another motion for stay of proceedings. (Doc. No. 267). After review of the numerous filings and issues presented, the Court believed that an in-person hearing was necessary, and it set the motion for a hearing on July 31, 2018. (Doc. No. 281). The Court also set Defendants' motions to dismiss for hearing that day on the limited issue of the status of the 2013 litigation.

On July 6, 2018, the Campbells filed a motion to withdraw their motion to stay, a maneuver that had previously been successful to avoid their presence at a hearing. (Doc. No. 284). The Campbells objected to the requirement that they must appear in person while Defendants could appear by counsel, and they stated that "Plaintiffs are not permitted to have an attorney". The Court

set the motion to withdraw for the July 31 hearing and reminded them that their pro se status did not excuse them from complying with the Court's Orders. The Court stated:

> [t]he primary purpose of requiring Plaintiffs to appear in person was not punitive. Instead, in light of the nature and history of the parties' dispute, the Court believes that a hearing would be beneficial to address specific issues in this case that have an impact on several important motions pending before the Court.

The Court also stated that the Campbells could retain counsel at any time, and that their attorney could appear at hearings on their behalf. The Court then reminded counsel for Defendants and the Campbells, if they remained pro se, that they must appear at the July 31 hearing.

On the eve of hearing, the Campbells requested a continuance because "Plaintiffs cannot physically devote the necessary time for sufficient preparation for a July 31, 2018 hearing." (Doc. No. 302). The Campbells argued that they worked six days per week; they must rely on their employer when they are away from their office for an extended period; a rare rate increase at their place of employment was occurring on August 1, 2018, which required additional customer service; there was a storage auction scheduled for July 28, 2018, which required the Campbells' physical presence; and fear for their safety in Missouri. (Doc. No. 302-2). The Court denied the motion because the Campbells had not shown good cause why their untimely motion should be granted on the eve of the hearing. (Doc. No. 303). The Court again reminded the Campbells that they filed this lawsuit in federal court in Missouri and, although they were proceeding pro se, they were not excused from complying with the Court's Orders.

This Court held the hearing, and the Campbells failed to appear.[1] The Court made a record of the attorneys who appeared on behalf of various Defendants, then continued the hearing to August 23, 2018. The Court again directed the Campbells to appear in person, and issued an order

---

[1] The Campbells also e-mailed a motion for leave to appear by telephone on the morning of the July 31 hearing. (Doc. No. 323). In their filing, the Campbells argued that travel to Missouri was a financial burden, and the undersigned's failure to grant their motion for costs contributed to their inability to travel.

requiring them to show cause why the Court should not impose sanctions under its inherent authority. That show cause order was set for a hearing on August 23, 2018 hearing.

On August 3, 2018, the Campbells filed a motion to continue the August 23, 2018 hearing (Doc. No. 324) and a motion to appear at the August 23, 2018 hearing telephonically (Doc. No. 325). In support, the Campbells cited their work obligations as Penske representatives, the difficulty of travel, their work on other Missouri lawsuits, Dave Campbells' fear that his wife would suffer a nervous breakdown, and their fear of physical harm. The Court denied the motions and noted that the Campbells' failure to appear at the hearing could result in sanctions being imposed. (Doc. No. 327).

On August 16, 2018, the Campbells again sought a continuance of the hearing and requested to appear telephonically. (Doc. No. 331). The Court again denied the motion, reminding the Campbells that the Court had sought to hold a hearing in this matter since June.[2] (Doc. No. 335). The Court directed the Campbells to appear at the August 23 hearing and again warned that failure to do so could result in sanctions.

On August 20, 2018, the Campbells filed another motion to continue the August 23 hearing because Mrs. Campbells' grandmother had passed away on August 13, 2018. (Doc. No. 339). The Campbells stated that they would not attend the hearing. (Doc. No. 339). They cited their Penske employment obligations as additional grounds for requesting the continuance. The Campbells also requested for the first time a continuance to secure counsel.

The Court denied the motion, noting that while the reasons previously cited by the Campbells did not constitute good cause, the Court would have excused Mrs. Campbell's attendance at the hearing had Plaintiffs not expressly stated they would not appear at the hearing.

---

[2] In fact, the Court first set the matter for a hearing in May, which strengthens the Court's position that it has consistently expressed its desire to hold a hearing in an effort to resolve certain complex issues in the case.

(Doc. No. 340). The Court noted that failing to appear would result in the Court exercising its inherent authority and dismissing the case with prejudice for the Campbells' willful disobedience of a Court Order.

On August 23, 2018, the Court held the hearing, and the Campbells did not appear. Counsel for Defendants appeared, and the Court gave counsel the opportunity to state on the record their positions regarding their separate motions to dismiss, Plaintiffs' motion for costs, and the Court's Show Cause Order.

## DISCUSSION

Courts have a number of implied powers necessary to manage their own affairs and achieve the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). These inherent powers include the imposition of sanctions for the willful disobedience of a court order or when a losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975); s*ee also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987) ("The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches."). Sanctions may include outright dismissal of a lawsuit and assessment of attorney's fees. *See Chambers*, 501 U.S. at 45 ("outright dismissal of a lawsuit… is a particularly severe sanction, yet is within the court's discretion."); *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998) ("The court has inherent power to assess attorneys' fees as a sanction for willful disobedience of a court order."). Inherent powers must be exercised with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Chambers*, 501 U.S. at 44-45. Sanctions under a district court's inherent authority are reviewed for abuse of discretion. *Id.* at 55.

Here, the Campbells have willfully failed to comply with direct Orders of this Court. Specifically, the Campbells have failed to appear at two hearings that the Court specifically required they attend in person. The Court believed, and continues to believe, that an in-person hearing was necessary and proper under the circumstances of this case. The Campbells disregarded direct orders of the Court to appear and failed to provide good cause for their absence.

Moreover, the Court has considered the conduct of the Campbells since the inception of this litigation and finds that they have acted in bad faith. Filings in this case, the majority of which were filed by the Campbells, now exceed 330 docket entries. The Campbells have named as Defendants a wide variety of individuals and entities, including the attorneys who have been adverse to them, their own attorney, the judge at the state court level, and long-time appellate court employees. The Court, acknowledging that the Campbells are proceeding pro se, has given them significant deference throughout this litigation. The Court has liberally allowed the Campbells to file supplemental memoranda, notices to the Court, objections, and other filings that are not proper under the rules.

When the Court considers the filings in this case, the range of Defendants named in the lawsuit, and the Campbells' willful noncompliance with the Court's numerous orders to appear at hearings, it is clear that the Campbells have engaged in bad-faith conduct intended to abuse the judicial process and harass Defendants. The Campbells, by their own admission, never intended to appear in Court, instead believing that they could litigate this entire case from their home in Florida. This is because, it appears, the true intention of the Campbells was to re-litigate issues previously decided, bury the case under a mountain of filings, and cause Defendants to incur substantial legal fees and the Court to expend excessive judicial resources.

The Court considered the range of sanctions available under its inherent authority, including monetary sanctions, attorney's fees, and striking of pleadings. Although the Court is reluctant to

impose the severest of sanctions in the form of dismissal of the lawsuit with prejudice, it must also consider to what extent the Campbells will ever comply with the Federal Rules of Civil Procedure and future orders of the Court. The Court concludes that based on the Campbells' pattern of conduct and persistent violation of the Federal Rules, they will not obey future orders issued by the Court in this case. Thus, dismissal with prejudice is the appropriate sanction.

## CONCLUSION

**IT IS HEREBY ORDERED** that based on Plaintiffs' repeated willful non-compliance with the Orders of the Court, this matter is **DISMISSED WITH PREJUDICE** under the Court's inherent authority to impose sanctions.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED as moot**.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 24th day of August, 2018.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE